Opinion filed November 2, 2006



















 
 
  
 
 







 
 
  
 
 




Opinion filed November 2, 2006

 

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                 ____________

 

                                                          No. 11-05-00259-CV 

                                                    __________

 

                             CITY OF
 MCKINNEY, TEXAS, Appellant

                                                             V.

                                  ELDORADO
PARK, LTD., Appellee

 



 

                                  On
Appeal from the County Court at Law No. 1 

                                                          Collin County,
Texas

                                              Trial
Court Cause No. 002-1169-03

 



 

                                                                   O
P I N I O N

Appellant, the City of McKinney, Texas, sought to
condemn property owned by appellee, Eldorado Park, Ltd., in connection with a
roadway project.  The trial court
appointed three special commissioners to assess Eldorado Park=s damages resulting from the
condemnation.  At the hearing before the
special commissioners, both parties presented expert testimony from property
value appraisers on the damages issues. 
The expert appraisers relied on a 1996 Federal Emergency Management
Agency (FEMA) Letter of Map Revision to determine the portion of the subject
property included in the floodplain.  The
special commissioners entered an award of damages to Eldorado Park.








The City appealed the special commissioners= award by filing objections with the
trial court, and the trial court placed this cause on its docket.  The City designated a new expert appraiser to
testify on the damages issues at trial. 
The City=s new
expert relied on a document entitled Cottonwood Creek Master Drainage Study for
the City of McKinney
(2001 Master Drainage Study) to determine the portion of the subject property
included in the floodplain.  The 2001
Master Drainage Study doubled the amount of floodplain acreage in the subject
property.  Eldorado Park filed a plea to
the jurisdiction arguing that the City=s
use of the 2001 Master Drainage Study materially changed the issues presented
to the special commissioners and, therefore, deprived the trial court of
subject-matter jurisdiction.  The trial
court granted Eldorado
 Park=s plea and entered a judgment adopting
the special commissioners=
findings and award.  The City
appeals.  Because the City=s designation of a new expert witness
and reliance on the 2001 Master Drainage Study did not deprive the trial court
of subject-matter jurisdiction, we reverse the trial court=s judgment and remand this cause for
further proceedings consistent with this opinion.  

                                                 Factual
and Procedural Background

Eldorado Park owns a 17.419-acre tract of land located at the
northeast corner of Lake Forest
 Drive and FM 720 in the City of McKinney. 
The City sought to acquire from Eldorado Park
the following portions of the 17.419-acre tract in connection with the roadway
project: (1) 1.0221 acres in fee simple for a road right-of-way; (2) .1216
acres for a slope easement; and (3) .2103 acres for a drainage easement.  The City=s
efforts to purchase the property from Eldorado Park
were unsuccessful; and the City, therefore, filed this condemnation action
pursuant to Chapter 21 of the Texas Property Code.  Tex.
Prop. Code Ann. ''
21.001-.103 (Vernon 2000, 2004, & Supp. 2006).  The City=s
petition for condemnation complied with the pleading requirements set forth in
Section 21.012 of the Property Code because the City=s
allegations (1) described the property to be condemned, (2) stated the purpose
for which the City intended to use the property, (3) stated that Eldorado Park
owned the property, and (4) stated that the City and Eldorado Park were unable
to agree on Eldorado Park=s
damages.  See Section
21.012(b)(1)-(4).

As required by Section 21.014 of the Property
Code, the trial court appointed three special commissioners to assess Eldorado Park=s
damages resulting from the condemnation. 
See Section 21.014(a).  The
commissioners each signed an oath swearing to assess the damages fairly,
impartially, and according to the law.  See
Section 21.014(b).








On November 20, 2003, the special commissioners
held a hearing to assess Eldorado
 Park=s damages.  The City used Daniel Wright of Integra Realty
Resources as its appraisal expert before the special commissioners.  Wright relied on the 1996 FEMA Letter of Map
Revision to determine that about 3.8009 acres of Eldorado Park=s 17.419-acre tract were located in a
flood hazard area. Wright determined that the total value of the 17.419 acres
was $2,681,150 and that the value of the property to be condemned was
$75,597.  He also determined that there
would be no damages to the remainder of the property B
the part of Eldorado
 Park=s property not being condemned B resulting from the condemnation.  Thus, Wright concluded that the amount of
damages due to Eldorado
 Park as a result of the
condemnation was $75,597.  Eldorado Park used Peter Malin of the Malin Group
as its appraisal expert before the special commissioners.  He also relied on the 1996 FEMA Letter of Map
Revision in performing his appraisal. 
Malin determined that the value of the property to be condemned was
$245,000 and that there would be no damages to the remainder of the property.
Therefore, Malin concluded that the amount of damages due to Eldorado Park
as a result of the condemnation was $245,000. 
The special commissioners assessed Eldorado Park=s damages in the amount of $185,500.

The City filed objections to the special
commissioners= award
under Section 21.018(a) of the Property Code. 
Therefore, Section 21.018(b) of the Property Code required the trial
court to cite Eldorado
 Park and A[to] try the case in the same manner as
other civil causes.@  The City also deposited the amount awarded by
the special commissioners into the registry of the court.  See Section 21.021(a)(1).  The trial court later ordered the clerk of
the court to disburse the money deposited in the registry of the court to Eldorado Park. 
See id.

The record shows that the parties exchanged
written discovery, but the record does not contain copies of the discovery
requests or discovery responses.  On
November 11, 2004, the trial court entered an agreed discovery control plan and
scheduling order.  The order required the
City to file a designation of its testifying experts by November 18, 2004.  The order set the cause for jury trial on
February 28, 2005.








On November 18, 2004, the deadline set forth in
the scheduling order, the City designated Stephen Fanning of Fanning &
Associates as a testifying appraisal expert. 
The City produced Fanning=s
appraisal report to Eldorado
 Park on December 10,
2004.  Fanning relied on the 2001 Master
Drainage Study to determine that 3.8 acres of the 17.419 acres owned by Eldorado Park were located in a flood hazard area
and that 3.7 acres of the 17.419 acres were located in a floodplain. Fanning
determined that the total value of the 17.419 acres was $2,100,000 and that the
value of the property to be condemned was $79,000.  He also determined that there would be no
damages to the remainder of the property. 
Therefore, Fanning concluded that the amount of damages due to Eldorado Park as a result of the condemnation was
$79,000.  The City produced a copy of the
2001 Master Drainage Study to Eldorado
 Park on January 19,
2005.  

On February 11, 2005, Eldorado Park
filed a plea to the jurisdiction and, in the alternative, motion to
strike.  Eldorado Park
stated the following in its plea to the jurisdiction:

In this condemnation case, Eldorado Park files
this Plea to the Jurisdiction in response to the City of McKinney, Texas= (ACity@) material change in the issues to be
tried before this Court from the issues presented to the Special
Commissioners.  The City has indicated,
by means of its expert=s
report produced on December 10, 2004, to present testimony and documentary
evidence in the form of floodplain maps and a drainage study that materially
vary from the expert opinions, floodplain maps and documentary evidence
presented before the Special Commissioners.

 

This material change divests this Court of subject
matter jurisdiction.

 

Eldorado
 Park asserted that the
material change in the issues required the trial court to dismiss the City=s objections to the special
commissioners=
award.  In its motion to strike, Eldorado Park sought to prohibit the City from
using the 2001 Master Drainage Study at trial Aas
a sanction for the City=s
egregious failure to produce, in a timely manner, [the study].@ 
Eldorado Park submitted three affidavits and
various documents in support of its plea to the jurisdiction and, in the
alternative, motion to strike.  The City
filed a response to the plea and motion.








The trial court did not conduct an evidentiary
hearing on Eldorado
 Park=s plea to the jurisdiction and, in the
alternative, motion to strike.  The trial
court determined that it did not have subject-matter jurisdiction over the
cause.  Therefore, the trial court
entered a judgment granting Eldorado
 Park=s plea to the jurisdiction, dismissing
the cause with prejudice, dismissing the City=s
objections to the special commissioners=
award, and adopting the special commissioners=
findings and award of $185,500.  The
trial court issued findings of fact and conclusions of law in support of its
judgment.  In one of its conclusions of
law, the trial court stated that Athe
City=s
deviation from the issues presented to the Special Commissioners create[d] the >incurable jurisdictional defect= and remove[d] subject matter
jurisdiction from this Court.@  Based on its ruling on the plea to the
jurisdiction, the trial court did not rule on Eldorado Park=s motion to strike.

                                                                 Issues
on Appeal

The City presents four issues for review.  In its first issue, the City argues that the
trial court erred in granting Eldorado Park=s
plea to the jurisdiction because the material change alleged by Eldorado Park B the variance between two floodplain
studies B did not
implicate the trial court=s
subject-matter jurisdiction.  In its
second issue, the City asserts that Eldorado
 Park waived its
jurisdictional challenges by withdrawing the amount awarded by the special
commissioners from the registry of the court. 
In its third issue, the City asserts that the trial court erred in
concluding that the City=s
anticipated use of the 2001 Master Drainage Study at trial materially
prejudiced Eldorado
 Park and injected a new
subject matter into the cause.  In its
fourth issue, the City argues that, if the trial court lacked jurisdiction, the
trial court erred in dismissing the City=s
objections to the special commissioners=
award and in entering a judgment against the City based on the special
commissioners= award.

                                                              Standard
of Review

A plea to the jurisdiction is a dilatory plea, the
purpose of which is to defeat a cause of action without regard to whether the
claims asserted have merit.  Bland
Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000). 
Whether a trial court has subject-matter jurisdiction is a question of
law that we review de novo.  Tex. Natural Res. Conservation Comm=n v. IT-Davy, 74 S.W.3d 849, 855 (Tex. 2002).  A plea to the jurisdiction challenges the
trial court=s
authority to determine the subject matter of the action.  Tex.
Dep=t of
Transp. v. Jones, 8 S.W.3d 636, 638 (Tex.
1999).  The plaintiff has the burden to
allege facts affirmatively showing that the trial court has subject-matter
jurisdiction to hear the case.  Tex. Ass=n of Bus. v. Tex.
Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993). 
In deciding a plea to the jurisdiction, a court considers the plaintiff=s pleadings and the evidence offered by
the parties relevant to the jurisdictional issue.  Tex.
Natural Res. Conservation Comm=n
v. White, 46 S.W.3d 864, 868 (Tex.
2001); Bland, 34 S.W.3d at 554-55.

 

 








                                                      The
Trial Court=s
Jurisdiction

Proceedings to condemn land are special in
character, and the party attempting to establish its right to condemn must show
strict compliance with the law authorizing private property to be taken for
public use.  State v. Bristol Hotel
Asset Co., 65 S.W.3d 638, 640 (Tex.
2001).  Currently, Chapter 21 of the
Texas Property Code governs the procedures for condemnation proceedings.  In condemnation proceedings, the property
owner is given a single opportunity to recover damages for the taking of his
property for public use.  Coastal
Indus. Water Auth. v. Celanese Corp. of Am., 592 S.W.2d 597, 599 (Tex. 1979).  Therefore, the protections of the statutory
condemnation procedures must be liberally construed for the benefit of the
landowner.  John v. State, 826
S.W.2d 138, 140 (Tex.
1992).

The Texas land condemnation scheme set forth in
Chapter 21 is a two-part procedure involving first an administrative proceeding
and then, if necessary, a judicial proceeding. 
Amason v. Natural Gas Pipeline Co., 682 S.W.2d 240, 241 (Tex. 1984).  A condemnor initiates the administrative
phase by filing a petition with the appropriate trial court.  See Section 21.012(a).  The petition must (1) describe the property
to be condemned, (2) state the purpose for which the entity intends to use the
property, (3) state the name of the owner of the property if the owner is
known, and (4) state that the entity and the property owner are unable to agree
on damages.  See Section
21.012(b).  After the condemnor files the
petition, the trial court appoints three special commissioners to assess the
property owner=s
damages.  See Section 21.014(a); see
also Bristol,
65 S.W.3d at 640-41.  The special
commissioners conduct a hearing, enter findings, and determine damages due the
property owner.  See Sections
21.014, 21.018; Metro. Transit Auth. v. Graham, 105 S.W.3d 754, 757
(Tex. App.CHouston
[14th Dist.] 2003, pet. denied).  From
the time the condemnor files its petition up to the time of the special
commissioners= award,
the proceedings are administrative in nature. 
Amason, 682 S.W.2d at 242.








The eminent domain jurisdiction of the trial court
is appellate, as distinguished from original or concurrent.  State v. Nelson, 334 S.W.2d 788, 791 (Tex. 1960).  Thus, the parties may not avoid an initial
administrative hearing before the special commissioners even if they wish to do
so.  Id.  Section
21.018(a) of the Property Code provides that the parties may challenge the special
commissioners= findings by filing a written objection
with the trial court.  See Bristol, 65 S.W.3d at
641.  The filing of an objection triggers
the trial court=s appellate jurisdiction; and, upon the
filing of an objection, the cause becomes a judicial proceeding in the trial
court.  Amason, 682 S.W.2d at
241-42; Graham, 105 S.W.3d at 757.

Section
21.018(b) of the Property Code provides that, if a party files an objection to
the special commissioners= findings, the trial court Ashall . . . try the case in the same manner
as other civil causes.@ 
Thus, when a party files an objection to the special commissioners= findings, the trial court conducts a trial
de novo in the proceeding.  In re
State, 65 S.W.3d 383, 387 (Tex. App.CTyler 2002, orig. proceeding); Blasingame
v. Krueger, 800 S.W.2d 391, 394 (Tex. App.CHouston
[14th Dist.] 1990, orig. proceeding). 
Although the trial court=s jurisdiction is termed appellate
jurisdiction, the trial de novo
involves Atrying
the matter anew,@ just as
if the special commissioners had not heard the matter before and had not
rendered a decision.  Blasingame,
800 S.W.2d at 394.  The trial court is
not confined to reviewing the special commissioners=
findings to determine whether they adequately support the award.  Id.  Rather, the special commissioners= award is vacated and inadmissible in
the trial de novo before the trial court. 
Amason, 682 S.W.2d at 242; In re State, 65 S.W.3d at 388; Blasingame,
800 S.W.2d at 394.  In the trial de novo,
the parties are not confined to using the evidence that they offered at the
special commissioners=
hearing.  Kennedy v. City of Dallas,
201 S.W.2d 840, 841-42 (Tex. Civ. App.CDallas
1947, writ ref=d
n.r.e.).

The courts have placed limits on the scope of the
de novo proceeding.  Courts have
explained that the trial court=s
appellate jurisdiction is limited to the parties and issues involved in the
administrative proceeding before the special commissioners.  See Brown v. State, 984 S.W.2d
348, 350 (Tex. App.CFort
Worth 1999, pet. denied); Patrick Media Group v. Dallas Area Rapid Transit,
879 S.W.2d 375, 377 (Tex. App.CEastland
1994, writ denied); Bd. of Regents v. Puett, 519 S.W.2d 667, 670 (Tex.
Civ. App.CAustin
1975, writ ref=d
n.r.e.).  In Nelson, the supreme
court explained that trial courts do not have unlimited power to enlarge the
subject matter of the proceeding.  Nelson,
334 S.W.2d at 790.  For example, the
trial courts cannot acquire by amendment to the pleadings the power to condemn
more land than that described in the petition for condemnation before the
special commissioners.  Id.  The trial courts are also without
jurisdiction over the claims of parties who were not parties to the proceedings
before the special commissioners.  Patrick
Media Group, 879 S.W.2d at 377; Puett, 519 S.W.2d at 671.








In this cause, the trial court appointed special
commissioners to assess Eldorado
 Park=s damages resulting from the
condemnation.  The City triggered the
trial court=s
appellate jurisdiction by filing objections to the special commissioners= award. 
When the City filed its objections to the award, this matter became a
judicial proceeding in the trial court subject to a trial de novo. Blasingame,
800 S.W.2d at 394.  The special
commissioners considered and decided the damages issues.  The same damages issues were before the trial
court during the judicial proceeding. 
The City and Eldorado
 Park were not confined to
using the evidence offered at the hearing before the special
commissioners.  Kennedy, 201
S.W.2d at 842.  Section 21.018(a) of the
Property Code provides for a trial de novo, not a substantial evidence review,
in the trial court.  Blasingame,
800 S.W.2d at 394. Nothing in Chapter 21 of the Property Code prohibits the
parties from changing expert witnesses, identifying new expert witnesses, or
using different documentary evidence after the hearing before the special
commissioners.  Thus, either party could
have designated new witnesses or used different evidence on the damages issues
in the trial court.

The City designated a new expert witness, Fanning,
on the damages issues.  Fanning relied on
the 2001 Master Drainage Study in arriving at his conclusions.  The City did not seek to enlarge the subject
matter of the proceeding, such as to condemn additional property or to expand
the issues that were before the special commissioners.  Fanning=s
proposed testimony on the value of the condemned property was relevant to the
damages issues.  Thus, the City=s use of Fanning as an expert related
to the very issues that the special commissioners previously decided.  By designating Fanning, the City changed its
evidentiary support relating to the damages issues, something that the City was
allowed to do.  Kennedy, 201
S.W.2d at 842. 
Fanning=s testimony was an evidentiary matter, not
a jurisdictional matter.  The City=s designation of Fanning as an expert
witness and use of the different study did not materially change the issues
presented to the special commissioners. 
Therefore, we hold that the City=s use of Fanning and the different study
for purposes of the trial de novo did not deprive the trial court of
subject-matter jurisdiction in this cause.








If
evidentiary matters, such as the one involved in this cause, were considered
jurisdictional and could deprive the trial courts of subject-matter
jurisdiction, then judgments in condemnation proceedings would be subject to
collateral attack.  Lack of subject-matter
jurisdiction renders a judgment void rather than merely voidable.  Mapco, Inc. v. Forrest, 795 S.W.2d
700, 703 (Tex.
1990).  Because a judgment rendered by a
court without subject-matter jurisdiction is void, the judgment is subject to
collateral attack.  Dolenz v. Vail,
143 S.W.3d 515, 517 (Tex. App.CDallas 2004, pet. denied).  Subject-matter jurisdiction cannot be waived
and may be raised for the first time on appeal. 
See Univ. of Tex. Sw.
Med. Ctr. v. Loutzenheiser, 140 S.W.3d 351, 358 (Tex. 2004).

Thus, if
the City=s use of Fanning as an expert witness had
deprived the trial court of subject-matter jurisdiction, Eldorado Park
could have proceeded to trial without objecting to Fanning=s testimony and raised the jurisdictional
issue for the first time in a direct appeal or by way of a collateral
attack.  In every condemnation case, the
property owner could collaterally attack the trial court=s judgment on the jurisdictional ground
that the evidence presented to the trial court varied from the evidence
presented to the special commissioners. 
Allowing collateral attacks based on mere evidentiary variances in
condemnation proceedings would lead to great uncertainty and a lack of finality
of judgments in condemnation proceedings.  It would also contradict policy
considerations favoring finality of judgments: 
A[T]he
modern direction of policy is to reduce the vulnerability of final judgments to
attack on the ground that the tribunal lacked subject matter jurisdiction.@ 
Dubai Petroleum Co. v. Kazi, 12 S.W.3d 71, 76 (Tex. 2000) (quoting Restatement (Second) Of Judgments '
11 cmt. e, at 113 (1982)).

Eldorado
 Park argues that the City=s Aegregious@ conduct in this cause merited the
trial court=s
granting of the plea to the jurisdiction. 
In support of its argument, Eldorado
 Park asserts that the
City could have produced the 2001 Master Drainage Study much earlier but that,
instead, the City intentionally withheld the study until about one month before
trial.  Eldorado Park
also asserts that the City concealed the study. 
During the judicial proceeding phase of condemnation cases, the parties
are free to conduct discovery under the Texas Rules of Civil Procedure.  See Blasingame, 800 S.W.2d at
394.  A delay in designating a witness or
in producing a document might give rise to discovery sanctions in some
cases.  However, such a delay does not
divest a trial court of jurisdiction.  A
trial court=s
subject-matter jurisdiction does not depend on the timing of a discovery
response.








In its motion to strike, Eldorado Park
sought to prohibit the City from using the 2001 Master Drainage Study at trial Aas a sanction for the City=s egregious failure to produce, in a
timely manner, [the study].@  The trial court did not rule on Eldorado Park=s
motion to strike in light of its conclusion that it lacked subject-matter
jurisdiction.  Therefore, Eldorado Park=s
motion to strike is not before this court. 
Additionally, the record does not support Eldorado Park=s claim that the City engaged in
discovery abuse.  The record demonstrates
that the parties exchanged written discovery. However, the record does not
contain copies of the discovery requests or responses.  Thus, there is no evidence in the record
supporting Eldorado
 Park=s contention that the City engaged in
discovery abuse.  The City designated
Fanning in a timely manner under the trial court=s
agreed discovery control plan and scheduling order.  The City produced the 2001 Master Drainage
Study after designating Fanning as an expert witness.  The record does not establish that the City
violated any discovery rule in its production of the study.  While discovery sanctions are appropriate in
some cases, the record in this cause does not establish conduct on the part of
the City that would warrant any discovery sanction.

In the trial court, Eldorado Park
relied on State v. PR Invs. and Specialty Retailers, 132 S.W.3d 55 (Tex.
App.CHouston
[14th Dist.] 2004), in support of its plea to the jurisdiction. Following the
original decision in PR Investments, the Houston Fourteenth court
granted en banc review in the case. 
After the City filed its appeal in this cause, the Houston Fourteenth
court withdrew the original opinion in PR Investments and issued an en
banc decision in the case.  State v.
PR Invs. and Specialty Retailers, 180 S.W.3d 654 (Tex. App.CHouston [14th Dist.] 2005, pet.
filed).  Eldorado Park
urges this court to adopt the reasoning of the dissent from the en banc court=s opinion.








In PR Investments, the State of Texas sought to condemn
.3407 acres of a 23-acre tract of land owned by PR Investments in connection
with a highway construction plan. 
Specialty Retailers leased a portion of the tract from PR
Investments.  The trial court appointed
three special commissioners to determine the damages due to PR Investments and
Specialty Retailers resulting from the condemnation.  PR Investments, 180 S.W.3d at
657-58.  At the hearing before the
special commissioners, the parties apprised the special commissioners that
construction for the project would be under a plan identified as the Sparks
Plan.  The Sparks Plan provided for a
deceleration lane when entering and an acceleration lane when leaving the
remainder of PR Investments=s
23-acre tract.  Id. at 659.  At the conclusion of the hearing, the special
commissioners assessed the damages jointly owed to PR Investments and Specialty
Retailers.  The State and PR Investments
filed objections to the special commissioners=
award, and the trial court scheduled the case for trial.  Id.

Five days prior to the trial setting in the PR
Investments case, the State changed construction plans for the project from
the Sparks Plan to a plan identified as the Corder Plan.  The Corder Plan did not contain the
deceleration and acceleration lanes called for in the plan presented to the
special commissioners.  Id. at 659.  PR Investments and Specialty Retailers
asserted that the State=s
change to the Corder Plan deprived the trial court of jurisdiction for two
reasons: (1) the change to the Corder Plan deprived them of greater rights and
imposed greater burdens on the remainder property than did the Sparks Plan; and
(2) the change to the Corder Plan changed the damages issues previously
considered by the special commissioners. 
Id.
at 660.  The trial court granted the
motions to dismiss based on these reasons. 
Id.
at 664.[1]  

In PR Investments, the court addressed the
issue of whether the trial court lost jurisdiction in the trial de novo
proceeding as a result of the State=s
switch in construction plans. After conducting a thorough analysis of the
condemnation statute and relevant case law, the PR Investments court
reached the following conclusions:

Nothing in the condemnation statute prohibits the
condemnor from changing its specific plan for the property after the
commissioners= hearing
in a way that allegedly prejudices the landowners.  Nor does any statutory provision require the
damage issues in the trial de novo to be the same as those considered by the
commissioners.  Accordingly, the two legal
bases upon which the trial court apparently concluded that it lacked
jurisdiction to conduct a trial de novo regarding the Corder Plan have no basis
in the condemnation statute and are erroneous statements of law.

 

Id.
at 667 (citations omitted).  Therefore,
the court held that the State=s
change to the Corder Plan did not deprive the trial court of jurisdiction in
the de novo proceeding.  Id. at 669.  The court reversed the trial court=s dismissal and remanded the case for
further proceedings.  Id. at 676.








PR Investments stands for the proposition
that a change in the damages issues after the special commissioners= award does not deprive the trial court
of jurisdiction of the condemnation case. 
The State=s change
to the Corder Plan in PR Investments caused potentially greater damages
to the remainder property.  The Corder
Plan did not contain deceleration and acceleration lanes.  PR Investments argued that, because the
Corder Plan lacked deceleration and acceleration lanes, Athe
Corder Plan substantially restricted safe access to the property, thus decreasing
the value of PR Investments=s
remaining property.@  Id.
at 660.  PR Investments claimed that less
access to the property meant greater damages to the remainder property.  

This cause does not involve damages to Eldorado Park=s
remainder property.  All of the expert
witnesses agreed that the condemnation would result in no damage to the
remainder of the property.  Nor does this
cause involve a change in a condemnation plan after the special commissioners= hearing.  The only damages issues in this cause relate
to the value of the property the City seeks to condemn.  The City=s
designation of Fanning and use of the 2001 Master Drainage Study did not change
the damages issues.  Rather, by
designating Fanning and using the study, the City merely changed the evidence
relating to the damages issues.  

PR Investments involved changes in the
condemnation plan and in the damages issues after the special commissioners= hearing.  This cause does not involve any such
changes.  Thus, while the decision in PR
Investments supports our decision in this cause, the facts in this cause
are distin-guishable from the facts in PR Investments, and our decision
in this cause does not depend on the court=s
holding in PR Investments.








The dissenting opinion in PR Investments
asserts that the majority opinion blurred the distinction between a trial court=s subject-matter jurisdiction and a
trial court=s
appellate jurisdiction, which the dissent also referred to as a trial court=s Apower
to proceed@ in
eminent domain proceedings.  The dissent
stated that, by blurring the distinction, the majority permitted Athe trial court to proceed to trial de
novo despite a substantial and prejudicial departure from the damages issues
presented to the special commissioners.@  Id.
at 677.  The dissent also asserted that,
because the majority=s
holding allowed such a departure from the issues presented to the special
commissioners, the majority=s
holding endorsed Atrial by
ambush@ in
eminent domain proceedings.  Id. at 677,
681.  As explained above, this cause does
not present the issues that concerned 
the dissenting justices in PR Investments because this cause does
not involve Aa
substantial and prejudicial departure from the damages issues presented to the
special commissioners.@  Thus, whichever term is used B Asubject-matter
jurisdiction,@ Aappellate jurisdiction,@ or Apower
to proceed@ B the holding in this cause remains the
same because the City did not change the damages issues presented to the
special commissioners.

The majority=s
holding in PR Investments does not permit trial by ambush in eminent
domain proceedings.  During the trial de
novo phase of eminent domain proceedings, the parties are free to conduct
discovery under the Texas Rules of Civil Procedure.  See Blasingame, 800 S.W.2d at
394.  Discovery of a party=s claims and issues before the trial de
novo prevents trial by ambush.

Eldorado
 Park argues that
permitting the City to use the 2001 Master Drainage Study at trial will
effectively allow the City to subvert the administrative phase of the eminent
domain proceeding in this cause.  We
disagree.  First, as explained above, a
change in the City=s damages
evidence at trial does not change the damages issues that the special
commissioners decided.  Second, the
purpose of the administrative phase is to provide the parties an opportunity
for a prompt resolution of the case with a minimum of expense.  See Nelson, 334 S.W.2d at 791.  Requiring the parties to expend the time and
money necessary to fully develop their claims and evidence before the special
commissioners= hearing
would defeat this purpose.  The
condemnation statute does not contain such a requirement.

The trial court erred in concluding that it lost
subject-matter jurisdiction in this cause. 
Therefore, we sustain the City=s
first and third appellate issues. 
Because we have sustained these 
issues, we need not address the City=s
second and fourth issues.  Tex. R. App. P. 47.1.

                                                               This
Court=s Ruling

We reverse the trial court=s
judgment and remand this cause for further proceedings consistent with this
opinion.

 

TERRY McCALL

JUSTICE

 

November 2, 2006

Panel
consists of:  Wright, C.J., and

McCall,
J, and Strange, J.











[1]PR Investments
also involved issues relating to the trial court=s
imposition of various sanctions against the State including the trial court=s dismissal of the case for alleged discovery
abuse.  PR Investments, 180 S.W.3d
at 669-76.  This cause involves only the
jurisdictional issue.